John Marsella
Robert McCreanor
Worker Justice Center of New York, Inc.
1187 Culver Road
Rochester, New York 14609
Tel: (585) 325-3050
Fax: (585) 325- 7614
jmarsella@wjcny.org
rmccreanor@wjcny.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROLANDO DIAZ REYES, HECTOR IVAN BURGOS RIVERA, JOSE A. GARCIA MARRERO, KIDANNY JOSUE MARTINEZ REYES and EDWIN COSME COLON as individuals and on behalf of all other similarly situated persons, | COLLECTIVE AND CLASS ACTION COMPLAINT |
| Plaintiffs, | Civil Action No. 1:18-cv-01017 |
| v. | JURY TRIAL REQUESTED |
| W. D. HENRY & SONS, INC., HENRY REALTY ASSOCIATES, INC., DANIEL HENRY, AND MARK C. HENRY | |
| Defendants. | |

## PRELIMINARY STATEMENT

1.      This is a collective and class action brought by U.S. citizen farm workers from Puerto Rico who for years reliably traveled to and labored in Defendants' New York-based agricultural business each season but in the past two years have been unlawfully displaced and discriminated against by Defendants who now import temporary foreign guest workers to do their jobs.

2.      Under the Migrant and Seasonal Agricultural Workers Protection Act ("AWPA") and the Immigration and Nationality Act ("INA") and corresponding regulations, Defendants are prohibited from displacing domestic workers in favor of guest workers under the H-2A visa program.  These laws also entitle Plaintiffs to the same benefits and working conditions as their H-2A guest worker counterparts, including travel reimbursement, heightened minimum wages and temporary housing.

3.      Beginning in 2016, Defendants undertook to replace their more than sixty (60) long-time Puerto Rican employees, including Plaintiffs, with H-2A guest workers and to evade their legal responsibilities by drastically reducing the work hours of U.S. farm worker employees, misrepresenting the rights of U.S. workers to higher paying employment opportunities provided to H-2A guest workers, summarily evicting U.S. farm workers from their housing in order to make room for H-2A guest workers, withholding wages from U.S. workers in order to coerce them into signing false declarations as purported evidence of abandonment of their jobs, and failing to recruit and re-hire U.S. workers.  Defendants did this during the same time that Plaintiffs' home community was devasted by Hurricane Maria and when Plaintiffs and their co-workers were in desperate need of employment.

4.      Plaintiffs seek for themselves and for all similarly situated individuals declaratory and injunctive relief as well as damages, attorneys' fees and costs for Defendants' violations of AWPA, INA, Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL") and breach of contract.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves two federal statutes, the Migrant and Seasonal Agricultural Worker

Protection Act, ("AWPA"), 29 U.S.C. §§ 1845(a) *et seq.* and the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.*

6.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1337(a) because the action involves an Act of Congress regulating commerce.

7.      With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that the state law claims derive from a common nucleus of operative fact and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

9.      Plaintiff Rolando Diaz Reyes currently resides in Puerto Rico.

10.     Plaintiff Hector Ivan Burgos Rivera currently resides in Puerto Rico.

11.     Plaintiff Jose A. Garcia Marrero currently resides in Puerto Rico.

12.     Plaintiff Kidanny Josue Martinez Reyes currently resides in Florida.

13.     Plaintiff Edwin Cosme Colon currently resides in Puerto Rico.

14.     At all times relevant to this action, Plaintiffs were migrant agricultural workers as defined in 29 U.S.C. § 1802(8)(a).

15.     Defendant W. D. Henry & Sons, Inc. is a New York Domestic Business Corporation located at 7189 Gowanda State Road, Eden, New York 14057 within Erie County performing farming and agricultural work.

16.     At all times relevant to this action, Defendant W. D. Henry & Sons, Inc. was an agricultural employer as defined in 29 U.S.C. § 1802(2).

17.     At all times relevant to this action, Defendant W. D. Henry & Sons, Inc. was an "employer" of Plaintiffs as defined in the FLSA and NYLL.

18.     Defendant Henry Realty Associates, Inc. is a New York Domestic Business Corporation located at 7189 Gowanda State Road, Eden, New York 14057 within Erie County.

19.     Defendant Henry Realty Associates, Inc. owns much of the farmland on which Plaintiffs and their co-workers labored and certain of the structures in which Plaintiffs and their co-workers were housed during their employment with Defendants.

20.     Upon information and belief, Defendant Daniel Henry currently resides in Eden, New York.

21.     Defendant Daniel Henry owns and/or manages Defendants W. D. Henry & Sons, Inc. and Henry Realty Associates, Inc. ("Corporate Defendants").

22.     Upon information and belief, Defendant Mark C. Henry currently resides in Eden, New York.

23.     Defendant Mark. C. Henry owns and/or manages the Corporate Defendants.

24.     At all times relevant to the Complaint, Defendants Mark C. Henry, Daniel Henry, and Corporate Defendants (collectively "Defendants") functioned as a single integrated enterprise engaged in related activities for a common business purpose under common ownership and management.

25.     At all times relevant to this Complaint, Defendants Mark C. Henry and Daniel Henry had the authority to, and did in fact, exercise active, operational control over all aspects of the day-to-day functions of Corporate Defendants.

26.     Defendants Mark C. Henry and Daniel Henry had the power to establish the terms and conditions of employment of Corporate Defendants' employees, including Plaintiffs, and did exercise this power.

27.     Defendants Mark C. Henry and Daniel Henry had the authority to, and did in fact, hire and fire Corporate Defendants' employees, including Plaintiffs.

28.     Defendants Mark C. Henry and Daniel Henry had the authority to, and did in fact, control Corporate Defendants' employees' work schedules, including Plaintiffs' work schedules.

29.     Defendants Mark C. Henry and Daniel Henry had the authority to, and did in fact, maintain Corporate Defendants' employment records, including those pertaining to Plaintiffs.

30.     Defendants Mark C. Henry and Daniel Henry had the authority to, and did in fact, determine the amounts that Corporate Defendants' employees, including Plaintiffs, were paid for their labor.

31.     At all times relevant to this Complaint, Defendants Mark C. Henry and Daniel Henry acted directly and indirectly in Corporate Defendants' interest in relation to their employees, including Plaintiffs.

## STATUTORY AND REGULATORY FRAMEWORK

32.     Section 218 of the Immigration and Nationality Act authorizes the lawful admission of temporary, nonimmigrant workers (H-2A workers) into the United States to perform agricultural labor or services of a temporary seasonal nature.  *See* 8 U.S.C. § 1188.

33.     In order to participate in the program, employers must file a temporary labor certification application with the National Processing Center designated by the Office of Foreign Labor Certification of the United States Department of Labor's ("USDOL") Employment and Training Administration.  *See id.*

34.     Under the H-2A program, an agricultural employer may only request temporary foreign agricultural workers after the USDOL certifies that two conditions are met:  (1) there are not enough U.S. workers ready and available to perform the jobs the employer wishes to fill with H-2A workers, and (2) the hiring of the H-2A workers will not adversely affect the wages and working conditions of similarly employed U.S. workers.  *See* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).

35.     Additionally, each temporary labor certification application must include a job offer on Form ETA-790, which is commonly referred to as the "job order" or "Clearance Order." 20 C.F.R. § 655.130(a).

36.     Employers participating in the H-2A program must agree to recruit and hire U.S. workers.  20 C.F.R. § 655.135(c).

37.     The H-2A regulations also provide that prior to filing an application with the USDOL an employer desiring to participate in the program must engage in specific steps to positively recruit domestic workers.  20 C.F.R. § 655.135(c).

38.     Positive recruitment steps include, among others:  submitting a job order to the local State Workforce Agency, running print advertisements, and engaging in recruitment in all areas of "traditional or expected labor supply" for the intended employment, and contacting former workers through mail or other effective means.  8 U.S.C. § 1188(b)(4), 20 C.F.R. § 655.153.

39.     Before an employer's temporary labor certification can be approved, the employer must file a written recruitment report with the certifying officer.  The report must: identify all recruitment sources, identify all U.S. workers referred and the results of the referral, confirm that

all former U.S. worker employees have been contacted and by which means, and state the lawful, job-related reasons for which any U.S. workers were not hired. *See* 20 C.F.R. § 655.156.

40.     During the recruitment period, the job opportunity must remain open to any qualified U.S. worker regardless of race, color, national origin, age, sex, religion, handicap, or citizenship.  Any U.S. worker who applies for a job during this period may only be rejected for lawful, job-related reasons.  The employer must retain records of all rejections of U.S. workers.

41.     The employer must also agree to hire U.S. workers, even if it means displacing foreign H-2A workers and sending them home, for the first 50% of the contract period.

42.     An employer's participation in this program prohibits the preferential treatment of foreign H-2A workers, and an employer's job offer to domestic U.S. workers must match the same benefits, wages, and working conditions that the employer is offering, intends to offer, or will provide to H-2A workers.  *See* 20 C.F.R. § 655.

43.     The job orders and any obligations required under 8 U.S.C. § 1188, 28 C.F.R. Part 501, or 20 C.F.R. Part 655, subpart B constitute an enforceable agreement between the employer and *any* of its employees, including non-H-2A workers.

44.     The AWPA provides migrant agricultural workers the right to sue for actual and statutory damages and equitable relief when, *inter alia*, their agricultural employer (a) knowingly provides false or misleading information concerning the terms, conditions, or existence of agricultural employment; (b) fails to pay them their owed wages when due; and (c) without justification violates the terms of any working arrangement made with them.

45.     The FLSA requires an employer to pay costs, such as inbound travel costs for migrant agricultural workers, that are primarily for the benefit of the employer if such costs would take the non-exempt employee's earnings below the federal minimum wage.  Failure to

comply with this rule constitutes a violation of the FLSA's minimum wage provisions. 29 C.F.R. § 531.36(b).

46.     NYLL § 195(1) requires employers to provide written notices to all employees upon hiring and at the time of payment of wages containing accurate information regarding, *inter alia*, the rate or rates of pay and basis thereof and such information as the commissioner of the New York State Department of Labor ("NYSDOL") deems material and necessary.  The NYSDOL makes available to employers forms for this purpose, which require the employer to "describe housing arrangements, if any, including number of rooms and cooking facilities." NYLL further requires employers to notify their employees in writing of any changes to the information required to be set forth in such form at least seven calendar days prior to the time of such changes.

## FACTS

47.     Defendants own over 300 acres of commercial farmland in and around Eden, New York where they grow and produce flowers and vegetables for sale.

48.     For nearly two decades, Defendants have annually employed scores of workers recruited from in and around the community of Villalba, a town of approximately 20,000 people with a poverty rate higher than 50%, located in the central region of the U.S. Territory of Puerto Rico.  Defendants regularly sought workers from the Villalba area through direct outreach methods, including phone calls and communications through their agents in which Defendants promised jobs upon arrival in Eden, New York.  These workers recruited from Villalba have performed a range of seasonal physical labor for Defendants, including among other things, planting, cultivating, harvesting, picking, chopping, sorting, storing, cleaning, and grading vegetables.

49.     Plaintiffs are among the Puerto Rican workers who were recruited from Villalba by Defendants in this manner.

50.     From at least 2001 through the 2016 agricultural season, Defendants' Puerto Rican workers, typically totaling at least sixty individuals, annually travelled to Eden, New York at their own cost to work long hours in Defendants' business, generally earning nothing more than the New York State minimum wage.

51.     On or about 2016, Defendants began to take steps to replace Plaintiffs and other U.S. citizen Puerto Rican workers with temporary foreign guest workers under the H-2A program.

52.     Employers such as Defendants have numerous incentives for employing H-2A guest workers instead of domestic U.S. workers.  Guest worker visas and immigration status are tied to one employer and at any point in time an employer may fire the worker and report him or her to the government as out of status.  This dramatically skews the balance of power between workers and employers and functionally prevents employees, fearful of doing anything to risk their immigration status as well as their source of income, from making complaints or otherwise addressing employment abuses.  Additionally, employers are exempt from paying U.S. Social Security and Medicare taxes for H-2A guest workers, and H-2A workers are not entitled to unemployment insurance benefits.  The H-2A system also permits unfettered discrimination in the hiring of workers because the recruitment happens outside the territory of the United States.

53.     Currently, Defendants employ no more than sixteen (16) U.S. agricultural employees and have imported as many as sixty-four (64) foreign H-2A guest workers for the 2018 agricultural season.

*Defendants' H-2A Applications*

54.     In 2017 and 2018, Defendant W. D. Henry & Sons, Inc., by and through its agent

MAS Labor H-2A LLC, applied to the USDOL to employ foreign H-2A workers.

55.     On April 11, 2017, Defendant Daniel M. Henry, Vice President of Defendant W.

D. Henry & Sons, Inc., signed an H-2A application on behalf of Defendant W. D. Henry & Sons,

Inc.

56.     The application submitted by Defendant W. D. Henry & Sons, Inc. contained an

"Agricultural and Food Processing Clearance Order ETA Form 790" ("First 2017 Clearance

Order") as an attachment.

57.     The application submitted by Defendant W. D. Henry & Sons, Inc. requested

forty (40) H-2A workers, as set forth in the First 2017 Clearance Order attached to the

application.

58.     The application submitted by Defendant W. D. Henry & Sons, Inc. requested the

workers for an anticipated period of employment from June 15, 2017 to October 7, 2017, as set

forth in the First 2017 Clearance Order attached to the application.  Defendants' application was

certified and approved by the U.S. Department of Labor.

59.     On May 22, 2017, Defendant Daniel M. Henry, Vice President of Defendant W.

D. Henry & Sons, Inc., signed another H-2A application on behalf of Defendant W. D. Henry &

Sons, Inc.

60.     The second application submitted by Defendant W. D. Henry & Sons, Inc.

contained an "Agricultural and Food Processing Clearance Order ETA Form 790" ("Second

2017 Clearance Order") as an attachment.

61.     The application submitted by Defendant W. D. Henry & Sons, Inc. requested eighteen (18) H-2A workers, as set forth in the Second 2017 Clearance Order attached to the application.

62.     The application submitted by Defendant W. D. Henry & Sons, Inc. requested the workers for an anticipated period of employment from July 21, 2017 to October 26, 2017, as set forth in the Second 2017 Clearance Order attached to the application.  Defendants' application was certified and approved by the U.S. Department of Labor.

63.     On April 23, 2018, Defendant Daniel M. Henry signed another H-2A application on behalf of Defendant W. D. Henry & Sons, Inc.

64.     The application submitted by Defendant W. D. Henry & Sons, Inc. contained an "Agricultural and Food Processing Clearance Order ETA Form 790" ("2018 Clearance Order") as an attachment.

65.     The application submitted by Defendant W. D. Henry & Sons, Inc. requested sixty-four (64) H-2A workers, as set forth in the 2018 Clearance Order attached to the application.

66.     The application submitted by Defendant W. D. Henry & Sons, Inc. requested the workers for an anticipated period of employment from June 30, 2018 to October 20, 2018, as set forth in the 2018 Clearance Order attached to the application.  Defendants' application was certified and approved by the U.S. Department of Labor.

67.     As part of both the 2017 and 2018 H-2A applications, Defendant W. D. Henry & Sons, Inc. assured the federal government that it would comply with all federal and state employment laws.

68.     Pursuant to the regulations governing the H-2A program and Defendants' applications, Defendants were required to pay all workers performing tasks covered by its H-2A applications and Clearance Orders at least the applicable Adverse Effect Wage Rate ("AEWR") as published annually by the U.S. Department of Agriculture.

69.     The tasks specified in Defendants' 2017 H-2A applications and Clearance Orders included but were not limited to harvesting vegetables; weeding and thinning plants; picking, lifting, cutting and pulling crops; grading, sizing and field packing product; weeding fields; shoveling, hoeing, hauling and other manual tasks.

70.     The tasks specified in Defendants' 2018 H-2A applications and Clearance Orders included but were not limited to planting, cultivating and harvesting vegetables; spreading plastic and other ground covering; grading, sorting and packing vegetables in field and packing facility; lifting, carrying and loading/unloading products and supplies; and operating agricultural equipment.

71.     The AEWR in New York State was $12.38 per hour in 2017 and $12.83 per hour in 2018.

72.     Defendants' 2017 approved applications and annexed Clearance Orders stated that Defendants would offer their agricultural employees 36 hours of work per week, weather and crops permitting.

73.     Defendants' 2018 approved applications and annexed Clearance Orders stated that Defendants would offer their agricultural employees 40 hours of work per week, weather and crops permitting.

74.     Defendants' 2017 and 2018 approved applications and annexed Clearance Orders stated that Defendants would (a) reimburse transportation costs and reasonable subsistence for

migrant agricultural workers with pay for the first workweek to the extent such worker-borne

expenditures reduced a worker's earnings below the FLSA minimum wage for the first

workweek and (b) reimburse all such transportation and subsistence costs for migrant

agricultural workers by the halfway point of the contract, as required by 20 C.F.R. §

655.122(h)(1).

75.     The FLSA minimum wage in 2017 and 2018 was $7.25 per hour.  *See* 29 U.S.C. §

206.

### *Plaintiffs' Employment with Defendants*

### Rolando Diaz Reyes

76.     Defendants employed Plaintiff Rolando Diaz Reyes seasonally from June of 2015

until late August 2017.

77.     Plaintiff Rolando Diaz Reyes performed a range of physical labor each year for

Defendants, including but not limited to packing peppers, cucumber, zucchini, and eggplant;

harvesting peppers, squash, corn, broccoli; and planting corn.

78.     Despite having an approved H-2A contract that mandated payments of $12.38 per

hour for all tasks described above, Defendants paid Plaintiff Rolando Diaz Reyes $9.70 per hour

in 2017.

79.     In 2017, Defendants did not reimburse Plaintiff Rolando Diaz Reyes for any

inbound or outbound travel costs despite being required to do so pursuant to the terms of their

2017 Clearance Order and 20 C.F.R. § 655.122(h)(1).

80.     Plaintiff Rolando Diaz Reyes spent approximately $240 on travel costs getting to

Defendants' place of business at the beginning of the season and spent approximately $190 on

travel costs returning home at the conclusion of his employment.

81.     During his first work week, Plaintiff Rolando Diaz Reyes was effectively paid less than $7.25 per hour after accounting for his inbound travel costs.

82.     During the 2017 agricultural season, Defendants substantially reduced Plaintiff Rolando Diaz Reyes' work hours, sometimes providing him as few as 15 hours in a week.  At the same time, Defendants provided in excess of 40 hours per week of work to their H-2A guest workers.

83.     On Friday in late August of 2017, Defendants terminated Plaintiff Rolando Diaz Reyes' employment and told him, "Tuesday will be your last day.  We don't have any more work for you. This will be your last season."

84.     At the time Defendants terminated Plaintiff Rolando Diaz Reyes' employment, they employed and continued to employ for more than a month dozens of H-2A guest workers.

85.     Prior to the 2018 season, Defendants never informed Plaintiff Rolando Diaz Reyes that work was available to him pursuant to the new 2018 H-2A Clearance Order.

86.     Plaintiff Rolando Diaz Reyes was not contacted by Defendants in between the 2017 and 2018 growing seasons in any way.

**Hector Ivan Burgos Rivera**

87.     Defendants employed Plaintiff Hector Ivan Burgos Rivera seasonally from approximately July 2016 until approximately October 3, 2017.

88.     Plaintiff Hector Ivan Burgos Rivera performed a range of physical labor for Defendants each year including but not limited to harvesting cucumbers, bell peppers, jalapeños, corn, and cauliflower; and packing cucumbers, bell peppers, yellow hot peppers, jalapeños, corn, squash and eggplant.

89.     Despite having an approved H-2A contract that mandated payments of $12.38 per hour for all tasks described above, Defendants paid Plaintiff Hector Ivan Burgos Rivera $9.70 per hour in 2017.

90.     In 2017, Defendants represented to Plaintiff Hector Ivan Burgos Rivera that field work was available which *might* pay $12.38 per hour but that he might also be paid less than $12.38 per hour for such work and that he might be sent back to Puerto Rico if he chose to do field work.

91.     In 2017, Plaintiff Hector Ivan Burgos Rivera was not reimbursed for any inbound or outbound travel costs.

92.     Plaintiff Hector Ivan Burgos Rivera spent approximately $240 on travels costs getting to Defendants' place of business at the beginning of the season and spent approximately $210 on travel costs returning home at the conclusion of his employment.

93.     During his first work week, Plaintiff Hector Ivan Burgos Rivera was effectively paid less than $7.25 per hour after accounting for his inbound travel costs.

94.     During the 2017 agricultural season, Defendants substantially reduced Plaintiff Hector Ivan Burgos Rivera's work hours, sometimes providing him as few as 2 hours in a day. At the same time, Defendants regularly provided at least 10 hours per day of work to their H-2A guest workers.

95.     On or about October 3, 2017, Plaintiff Hector Ivan Burgos Rivera was forced to leave his employment with Defendants because he was provided with so few work hours he could not support himself and his family.

96.     At the time Plaintiff Hector Ivan Burgos Rivera left his employment with Defendants, Defendants refused to give him his final pay check unless he signed a document which purported to signify his abandonment of the job.

97.     Defendants subsequently used this document to challenge Plaintiff Hector Ivan Burgos Rivera's unemployment insurance claim.

98.     Prior to the 2018 season, Defendants never informed Plaintiff Hector Ivan Burgos Rivera that work was available to him pursuant to the new 2018 H-2A Clearance Order.

99.     Plaintiff Hector Ivan Burgos Rivera was not contacted by Defendants in between the 2017 and 2018 growing seasons in any way.

**Jose A. Garcia Marrero**

100.     Defendants employed Plaintiff Jose A. Garcia Marrero seasonally from on or about June 15, 2016 to on or about November 3, 2016 and again from on or about July 10, 2017 to on or about August 28, 2017.

101.     Plaintiff Jose A. Garcia Marrero performed a range of physical labor for Defendants each year including but not limited to removing plastic from corn fields, cutting and packing corn, packing cucumbers and peppers, cleaning and packing squash, planting broccoli and cauliflower, and cleaning the packing machines inside the greenhouse.

102.     Despite having an approved H-2A contract that mandated payments of $12.38 per hour for all tasks described above, Defendants paid Plaintiff Jose A. Garcia Marrero $9.70 per hour in 2017.

103.     In 2017, Plaintiff Jose A. Garcia Marrero was not reimbursed for any inbound or outbound travel costs.

104.    Plaintiff Jose A. Garcia Marrero spent approximately $385 on travel costs getting to Defendants' place of business at the beginning of the season and spent approximately $270 on travel costs returning home at the conclusion of his employment.

105.    During his first work week, Plaintiff Jose A. Garcia Marrero was effectively paid less than $7.25 per hour after accounting for his inbound travel costs.

106.    During the 2017 agricultural season, Defendants substantially reduced Plaintiff Jose A. Garcia Marrero's work hours, sometimes providing him less than 40 hours in a week.  At the same time, Defendants regularly provided far more hours of work per week to their H-2A guest workers.

107.    On or about August 28, 2017, Defendants terminated Plaintiff Jose A. Garcia Marrero's employment despite the fact that there were substantial crops to be harvested and many H-2A guest workers continuing to perform the same work.

108.    Prior to the 2018 season, Defendants never informed Plaintiff Jose A. Garcia Marrero that work was available to him pursuant to the new 2018 H-2A Clearance Order.

109.    Plaintiff Jose A. Garcia Marrero was not contacted by Defendants in between the 2017 and 2018 growing seasons in any way.

**Kidanny Josue Martinez Reyes**

110.    Defendants employed Plaintiff Kidanny Josue Martinez Reyes seasonally beginning in 2015.  In 2017, he worked for Defendants from on or about June 16, 2017 to on or about October 11, 2017.

111.    Plaintiff Kidanny Josue Martinez Reyes performed a range of physical labor for Defendants each year including but not limited to packing squash, cucumbers, and peppers, and cutting and packing corn.

112.     Despite having an approved H-2A contract that mandated payments of $12.38 per hour for all tasks described above, Defendants paid Plaintiff Kidanny Josue Martinez Reyes $9.70 per hour in 2017.

113.     In 2017, Plaintiff Kidanny Josue Martinez Reyes was not reimbursed for any inbound or outbound travel costs.

114.     Plaintiff Kidanny Josue Martinez Reyes spent approximately $200 on travel costs getting to Defendants' place of business at the beginning of the season and spent approximately $200 on travel costs returning home at the conclusion of his employment.

115.     During his first work week, Plaintiff Kidanny Josue Martinez Reyes was effectively paid less than $7.25 per hour after accounting for his inbound travel costs.

116.     On or about October 12, 2017, Plaintiff Kidanny Josue Martinez Reyes's employment with Defendants ended.  At the same time, Defendants refused to give him his final pay check unless he signed a document which purported to signify his abandonment of the job.

117.     On or about May 2018, Plaintiff Kidanny Josue Martinez Reyes travelled at his own expense from Puerto Rico to Eden, New York.  He presented himself to Defendants at their place of business and sought re-employment, after Defendants had sought permission from the government to import foreign guest workers because of a purported shortage of U.S. workers. Defendants told Plaintiff Kidanny Josue Martinez Reyes that no work was available to him at that time but that he could re-apply for work at the beginning of the H-2A contract on June 30, 2018.  At the same time, Defendants were hiring, employing and housing other workers.

**Edwin Cosme Colon**

118.     Defendants employed Plaintiff Edwin Cosme Colon from on or about July 26, 2017 to on or about September 16, 2017.

119.    Plaintiff Edwin Cosme Colon performed a range of physical labor for Defendants including but not limited to packing cucumbers, squash, corn, peppers; planting broccoli and cauliflower; and harvesting corn.

120.    Despite having an approved H-2A contract that mandated payments of $12.38 per hour for all tasks described above, Defendants paid Plaintiff Edwin Cosme Colon $9.70 per hour in 2017.

121.    In 2017, Plaintiff Edwin Cosme Colon was not reimbursed for any inbound or outbound travel costs.

122.    Plaintiff Edwin Cosme Colon spent approximately $300 on travel costs getting to Defendants' place of business at the beginning of the season and spent approximately $620 on travel costs returning home at the conclusion of his employment.

123.    During his first work week, Plaintiff Edwin Cosme Colon was effectively paid less than $7.25 per hour after accounting for his inbound travel costs.

124.    During the 2017 agricultural season, Defendants substantially reduced Plaintiff Edwin Cosme Colon's work hours.  At the same time, Defendants regularly provided at least 10 hours per day of work to their H-2A guest workers.

125.    Prior to the 2018 season, Defendants never informed Plaintiff Edwin Cosme Colon that work was available to him pursuant to the new 2018 H-2A Clearance Order.

126.    Plaintiff Edwin Cosme Colon was not contacted by Defendants in between the 2017 and 2018 growing seasons in any way.

### Plaintiffs' Housing and Work Conditions

127.    Plaintiffs were initially housed by Defendants in migrant farm worker housing structures located at Defendants' place of business.

19

128.    During the 2017 agricultural season, Defendants abruptly removed Plaintiffs Hector Ivan Burgos Rivera, Jose A. Garcia Marrero, Kidanny Josue Martinez Reyes, Edwin Cosme Colon and several other migrant farm workers from their on-site employee housing and placed them in a motel 12 miles away because, according to Defendants, the housing was needed for H-2A workers and "inspectors from the H-2A program were coming."  This relocation caused Plaintiffs to lose perishable groceries, deprived them of standard cooking facilities, and required them to commute for 20-30 minutes to and from work each day for which they were not compensated.

129.    Defendants did not at any time notify Plaintiffs Hector Ivan Burgos Rivera, Jose A. Garcia Marrero, Kidanny Josue Martinez Reyes, or Edwin Cosme Colon in writing of the changes to their housing accommodations, as required by NYLL § 195.

130.    Plaintiffs were denied ready access to drinking water and bathroom facilities when they worked in Defendants' fields.  At the same time, Defendants provided portable bathroom facilities and dedicated drinking water to their foreign H-2A guest workers.

### *Defendants' Uniform Practices Towards Plaintiffs and Their U.S. Co-Workers*

131.    Upon information and belief, between 2016 and the present, Defendants did the following to Plaintiffs and nearly all of the approximately sixty other U.S. workers employed by Defendants:

      i.    Defendants reduced the work hours of their U.S. employees while providing far greater work hours to their H-2A guest workers in violation of Defendants' obligations under their approved applications and Clearance Orders and in violation of written and verbal promises made by Defendants to their U.S. employees;

ii. Defendants failed to compensate their U.S. migrant farm worker employees at the AEWR for labor that was covered by the H-2A Clearance Orders and/or performed by Defendants' H-2A guest workers;

iii. Defendants failed to reimburse their U.S. migrant farm worker employees for costs of inbound and outbound travel while such benefits were provided for under Defendants' H-2A Clearance Orders;

iv. Defendants misrepresented whether employment was available to U.S. workers and the conditions of such employment;

v. Defendants failed to affirmatively recruit and re-hire U.S. workers whom they had previously employed;

vi. At the time that Plaintiffs and other U.S. workers began working for Defendants, Defendants failed to furnish them with accurate written disclosures of their legally mandated wage rates or provide written disclosures with other required information, such as legally required transportation cost reimbursement, as required by NYLL § 195(1);

vii. Defendants never thereafter furnished Plaintiffs and other U.S. workers with accurate written disclosures as required by NYLL § 195(1); and

viii. Defendants failed to furnish Plaintiffs and other U.S. workers with accurate wage statements containing the information required by NYLL § 193(3).

### FLSA Collective Action Allegations

132. Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated U.S. migrant agricultural employees of Defendants who may opt in to this action pursuant to 29 U.S.C. § 216(b) and who were employed by any of the Defendants on a temporary

or seasonal basis in handling, planting, drying, packing, packaging, processing, and/or grading prior to delivery for storage agricultural and horticultural commodities in their unmanufactured states at any time during the period from 2017 to 2018 and who were required to be absent overnight from their permanent place of residence.

133.    Plaintiffs and FLSA collective action members were subject to the same uniform policies and practices of Defendants and were paid in the same manner. Specifically, Defendants failed to reimburse Plaintiffs and FLSA collective action members for their inbound travel and subsistence costs thereby reducing Plaintiffs' and FLSA collective action members' earnings below the FLSA minimum wage in violation of FLSA, 29 U.S.C. §§ 201 *et seq.*

134.    Plaintiffs are currently unaware of the identities of all of the employees who would be members of the FLSA opt-in class, but this information is readily ascertainable from Defendants' records.  Defendants should therefore be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who worked for Defendants since September 14, 2016.

### Rule 23 Class Allegations

135.    Plaintiffs bring their AWPA, NYLL and Breach of Contract claims on behalf of themselves and all other persons similarly situated, pursuant to Fed. R. Civ. P. Rule 23.

136.    Plaintiffs seek to represent the following class (the "Class"): all U.S. migrant agricultural workers employed by Defendants on a temporary or seasonal basis in  handling, planting, drying, packing, packaging, processing, and/or grading prior to delivery for storage agricultural and horticultural commodities in their unmanufactured states at any time during the period from 2016 to 2018 and who were required to be absent overnight from their permanent place of residence.

22

137.     The Class is so numerous that joinder of all members is impracticable.  The exact size of the class is not known; however on information and belief, the Class consists of over 60 people.

138.     Representative Plaintiffs are represented by experienced counsel through the Worker Justice Center of New York, Inc. who will vigorously prosecute the litigation on behalf of the Class.

139.     Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

    i.     Members of the Class do not have an overriding interest in individually controlling the prosecution of separate actions;

    ii.     No litigation concerning this controversy has been commenced by any member of the Class;

    iii.     Concentration of the litigation in this forum is desirable in order to have all claims resolved in one case; and

    iv.     A class action can be managed without undue difficulty because the issues presented are common to the Class, Defendant is required to maintain detailed records concerning each member of the Class, and Plaintiffs' counsel have experience prosecuting cases of this nature.

140.     Common questions of law and fact include:

    i.     Whether Defendants had a practice of employing U.S. migrant agricultural workers to perform labor which was covered by the 2017 and 2018 Clearance Orders or was otherwise performed by H-2A workers;

ii.    Whether Defendants had a practice of failing to pay at least the AEWR to U.S. migrant agricultural workers it employed when those wages were due, in violation of 29 U.S.C. § 1822(a);

iii.   Whether Defendants had a practice of failing to pay U.S. migrant agricultural workers for their inbound and outbound travel expenses in violation of C.F.R. § 655.122.

iv.    Whether Defendants had a practice of failing to provide U.S. migrant agricultural workers with other benefits and accommodations required under their 2017 and 2018 Clearance Orders;

v.     Whether Defendants had a practice of failing to recruit and rehire U.S. domestic workers in violation of 29 U.S.C. §§ 1821(f), 1822(c);

vi.    Whether Defendants had a practice of knowingly providing false and misleading information as to the existence, terms and conditions of agricultural employment to U.S. migrant agricultural workers; and

vii.   Whether Defendants had a practice of failing to provide their employees with accurate hiring and wage notices as required by NYLL.

141.   The claims of Plaintiffs collectively are typical of the claims of the Class they seek to represent, and they will fairly and adequately protect the interests of the Class.

**FIRST CAUSE OF ACTION**
**AWPA**

142.   Plaintiffs repeat each and every allegation set forth above as if fully set forth herein at length.

143.    Defendants failed to comply with the "truthful information," "payment of wages," and "working arrangement" provisions of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1821 (f); 1822(a),(c).

144.    Defendants had a practice of making or causing to be made false or misleading representations concerning the terms, conditions or existence of employment, by failing to inform U.S. migrant workers about the availability of $12.38 per hour laborer jobs in 2017 and $12.83 per hour laborer jobs in 2018, in violation of 29 U.S.C. § 1821(f).

145.    In 2017, Defendants had a practice of failing to pay $12.38 per hour to Plaintiffs and similarly situated class members it employed as migrant workers when those wages were due, in violation of 29 U.S.C. § 1822(a).

146.    In 2017 and 2018, Defendants had a practice of failing to provide Plaintiffs and similarly situated class members with employment on the terms and conditions required by their H-2A Clearance Orders, in violation of 29 U.S.C. § 1822(c), to wit: Defendants reduced Plaintiffs' and similarly situated class members' hours without justification, failed to reimburse Plaintiffs and similarly situated class members for inbound and outbound travel costs, denied Plaintiffs and similarly situated class members their agreed upon housing arrangements without justification, and denied Plaintiffs and similarly situated class members access to drinking water and bathroom facilities which were made available to Defendants' foreign guest workers.

147.    As a result of Defendants' actions alleged herein, the Plaintiffs suffered economic damages.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT

148.    Plaintiffs repeat each and every allegation set forth above as if fully set forth herein at length.

149.     The Clearance Orders and any obligations required under 8 U.S.C. § 1188, 28 C.F.R. Part 501, or 20 C.F.R. Part 655, subpart B constitute an enforceable agreement between Plaintiffs and Defendants per se and are enforceable against Defendants.

150.     Defendants materially breached the enforceable agreement with the Plaintiffs by paying Plaintiffs less than the federally mandated AEWR for their work, failing to reimburse Plaintiffs for their inbound and outbound travel expenses, and otherwise failing to provide Plaintiffs with employment on the terms and conditions required by the 2017 and 2018 H-2A Clearance Orders.

151.     Plaintiffs did perform, or at all relevant times were ready, willing, and able to perform, but for Defendants' breach, all of their obligations under their agreement.

152.     Defendants' breach of these contract obligations has caused economic damages to the Plaintiffs.

### THIRD CAUSE OF ACTION
### FLSA

153.     Plaintiffs repeat each and every allegation set forth above as if fully set forth herein at length.

154.     Defendants failed to pay Plaintiffs and other similarly situated employees at least the federal minimum wage for every hour or partial hour Plaintiffs and other similarly situated employees worked per week as required by the Fair Labor Standards Act, 29 U.S.C. §§ *201 et. seq.* and its implementing regulations.

155.     Defendants' failure to pay the required minimum wage was willful within the meaning of 29 U.S.C. § 255 as Defendants knew or showed reckless disregard for the issue of whether Defendants' conduct was prohibited under the FLSA.

156.     Plaintiffs and other similarly situated employees are entitled to their unpaid

wages, plus an additional equal amount in liquidated damages, as a consequence of Defendants'

unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

157.    Plaintiffs and other similarly situated employees are also entitled to costs of Court

and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION
### NYLL

158.    Plaintiffs repeat each and every allegation set forth above as if fully set forth

herein at length.

159.    Defendants failed to pay Plaintiffs and other similarly situated workers their

wages when due, in violation of NYLL §§ 191 *et seq.*

160.    Defendants failed to furnish Plaintiffs and other similarly situated workers with

proper and accurate written notice at the time of hire and when required thereafter, as well as

with each payment of wages, in violation of NYLL §§ 195(1), (3).

161.    For Defendants' violations of NYLL § 195(1), Plaintiffs and other similarly

situated workers are entitled to $50 for each work day in which this violation continued to occur,

in an amount not to exceed $5,000 per injured party, pursuant to NYLL § 198(1-b).

162.     For Defendants' violations of NYLL § 195(3), Plaintiffs and other similarly

situated workers are entitled to $250 for each work day in which this violation continued to

occur, in an amount not to exceed $5,000 per injured party, pursuant to NYLL § 198(1-d).

163.    Plaintiffs and other similarly situated employees also seek, and are entitled to,

attorneys' fees incurred by their counsel, costs of Court, and interest.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs request the following relief:

1.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3);

2.      Designate the named Plaintiffs as class representatives pursuant to Fed. R. Civ. P. 23(a);

3.      Appoint Worker Justice Center of New York, Inc. as class counsel pursuant to Fed. R. Civ. P. 23(g);

4.      Certify Plaintiffs' FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b);

5.      Declare Defendants' conduct in violation of the INA, AWPA, FLSA and NYLL;

6.      Enjoin Defendants from further violations of the INA and AWPA;

7.      Direct Defendants to offer employment to Plaintiffs and class members as required by the INA, AWPA and Defendants' 2018 H-2A Clearance Order;

8.      Award each of the Plaintiffs and the other members of the class their statutory damages for violations of AWPA pursuant to 29 U.S.C. § 1854(c)(1);

9.      Award Plaintiffs statutory damages, attorneys' fees and costs for Defendants' violations of FLSA;

10.      Award Plaintiffs statutory damages, attorneys' fees and costs for Defendants' violations of NYLL; and

11.      Grant other further relief as just and appropriate.

Dated: September 14, 2018
    Rochester, New York

                                    John Marsella
                                    Robert McCreanor
                                    Worker Justice Center of New York, Inc.
                                    1187 Culver Road
                                    Rochester, New York 14609
                                    Tel: (585) 325-3050
                                    Fax: (585) 325- 7614
                                    jmarsella@wjcny.org
                                    rmccreanor@wjcny.org

                                    Attorneys for Plaintiff