UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROLANDO DIAZ REYES, HECTOR IVAN BURGOS
RIVERA, JOSE A. GARCIA MARRERO, KIDANNY
JOSUE MARTINEZ REYES and EDWIN COSME COLON
as individuals and on behalf of all other similarly situated
persons,

Civil Action No. 1:18-cv-01017

                Plaintiffs,

     v.

W.D. HENRY & SONS, INC., HENRY REALTY
ASSOCIATES, LLC, DANIEL HENRY, and
MARK C. HENRY

                Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
AN ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56
GRANTING SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT    1

STATEMENT OF FACTS    1

SUMMARY JUDGMENT MOTION STANDARD    1

ARGUMENT    3

POINT I:    THE UNITED STATES DEPARTMENT OF LABOR'S INVESTIGATION WARRANTS GRANTING DEFENDANTS' MOTION    3

POINT II:    PLAINTIFFS' FIRST CAUSE OF ACTION FAILS TO RAISE ANY ISSUES OF FACT    4

A.    In 2017 And 2018 W.D. Henry Offered H-2A Work To All Domestic Workers    4

     i.    2017 Domestic Workers Declined W.D. Henry's H-2A Job Offer    5

     ii.    2018 Domestic Workers Performed H-2A Work and Received Benefits In Compliance With The H-2A Clearance Order    7

B.    Domestic Workers Were Not Entitled To Pay At The 2017 AEWR Of $12.38 Per Hour Because They Declined The 2017 H-2A Job Offer    8

C.    Terms And Conditions Of Employment Under The H-2A Clearance Orders    9

     i.    The Average Weekly Hours Of Domestic Workers Exceeded The Average Weekly Hours Of H-2A Workers    10

     ii.    Reimbursement Of Transportation Costs    12

         a.    Defendants Did Not Have an Obligation to Reimburse/Pay Transportation Costs of the 2017 Domestic Workers    12

         b.    Defendants Complied With The Obligation To Reimburse/Pay Transportation Costs Of Its 2018

|  |  |  | Domestic Workers | 13 |

| | iii. | Housing Arrangements | 14 |

| | | a. | Housing Arrangements For 2017 Domestic Workers | 14 |

| | | b. | Housing Arrangements For 2018 Domestic Workers | 15 |

| | iv. | Defendants Provided All Workers With Available Drinking Water And Bathroom Facilities | 16 |

POINT III:    PLAINTIFFS' SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT LACKS MERIT    16

POINT IV:    PLAINTIFFS' THIRD CAUSE OF ACTION UNDER THE FLSA LACKS MERIT    17

    A.    Defendants Did Not Have An Obligation To Reimburse The 2017 Domestic Workers Under The FLSA    17

    B.    Defendants Reimbursed Eligible 2018 Domestic Workers For Inbound Travel Costs Under The FLSA    19

POINT V:    PLAINTIFFS' FOURTH CAUSE OF ACTION UNDER THE NEW YORK LABOR LAW LACKS MERIT    20

    A.    Frequency Of Payments    20

    B.    Final Paychecks    20

    C.    Notice At Time Of Hire    21

    D.    Weekly Notice    22

CONCLUSION    23

# TABLE OF AUTHORITIES

**Page(s)**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)……………………………………………………..   1, 2

*Brock v. Glassboro Serv. Ass'n, Inc.,*
1987 WL 25334, at *5 (D.N.J. 1987)…………………………………..   17

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)……………………………………………………..   2

*Donahue v. Windsor Locks Bd. of Fire Comm'rs,*
834 F.2d 54 (2d Cir. 1987)……………………………………………..   2

*Eagley v. State Farm Ins. Co.,*
No. 13-cv-6653, 2015 WL 5714402, at *5 (W.D.N.Y. Sept. 29, 2015)…..   1

*Gonzalez v. Gan Israel Preschool,*
2014 U.S. Dist. LEXIS 34633 at *3 (E.D.N.Y 2014)……………………..   20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)……………………………………………………..   2

*McLaughlin v. Glassboro Serv. Ass'n, Inc.,*
841 F.2d 1119 (3d Cir. 1988)…………………………………………….   17

*Montalvo v. Larchmont Farms, Inc.*
2009 U.S. Dist. LEXIS 112751, at *17-18 (D.N.J. 2009)………………....   17

*Ojeda-Sanches v. Bland Farms, LLC,*
2010 U.S. Dist. LEXIS 84752, at *24 (S.D.G 2010)………………………   19

*Ruiz Torres v. Mercer Canyons, Inc.,*
835 F.3d 1125 (9th Cir. 2016)………………………………………….   5, 8

*Salazar-Martinez v. Fowler Bros.*
781 F.Supp.2d 183 (W.D.N.Y. 2011)…………………………………...   18

*Savage v. Acquino,*
No. 13-CV-6376, 2018 WL 1478254, at *3 (W.D.N.Y. Mar. 23, 2018)….   2

*Thompson v. Gjivoje,*
896 F.2d 716 (2d Cir. 1990)……………………………………………..   2

**STATUTES**

20 C.F.R. § 166.122(n)                                    21

20 C.F.R. § 500.81                                        9

20 C.F.R. § 655.103(b)                                   5

20 C.F.R. § 655.122                                    4, 5, 12

20 C.F.R. § 655.122(a)                                   8

20 C.F.R. § 655.122(d)                                  14

20 C.F.R. § 655.122(h)(1)                              12, 13

20 C.F.R. § 655.122(h)(2)                              12

20 C.F.R. § 655.122(n)                               12, 13, 14

29 C.F.R. § 500.72(a)                                 14, 15

29 C.F.R. § 500.81                                       9

29 U.S.C § 1821(f)                                      4

29 U.S.C. § 1822(a)                                    8, 9

29 U.S.C. § 1822(c)                                   9, 14

Fed. Rule 56(a)(1)                                      1

Fed. Rule 56(c)                                         2

N.Y. Lab. Law § 191                                    20

N.Y. Lab. Law § 191(1)(a)(i)                          9, 20

N.Y. Lab. Law § 195                                    20

N.Y. Lab. Law § 195(1)                                21

N.Y. Lab. Law § 195(3)                                22

## PRELIMINARY STATEMENT

Defendants, W.D. Henry & Sons, Inc. ("W.D. Henry" or the "Farm"), Henry Realty Associates, LLC ("Henry Realty"), Daniel Henry ("Daniel") and Mark Henry ("Mark") (W.D. Henry, Henry Realty, Daniel and Mark may hereinafter be referred to collectively as the "Defendants"), respectfully submit this Memorandum of Law ("Memorandum") in support of their motion for an Order pursuant to Federal Rules of Civil Procedure 56 granting summary judgment dismissing the Plaintiffs' Complaint with prejudice.

## STATEMENT OF FACTS

Pursuant to Rule 56(a)(1) of the Local Rules of the United States District Court for the Western District of New York, Defendants submit a separate Statement of Material Facts in support of their motion for summary judgment, which are incorporated herein by reference.

## SUMMARY JUDGMENT MOTION STANDARD

"[S]ummary judgment is appropriate where 'the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Fed. R. Civ. P.* 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute of fact is material "only if it has some effect on the outcome of the suit." *Eagley v. State Farm Ins. Co.*, No. 13-cv-6653, 2015 WL 5714402, at *5 (W.D.N.Y. Sept. 29, 2015) (citation and quotation omitted). Moreover, a genuine issue exists as to a material fact "if the evidence is such that a

1

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When deciding a summary judgment motion, courts must resolve all inferences and ambiguities in favor of the party against whom summary judgment is sought. *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). The reasonableness of those inferences, though, depends on "the record taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)." *Savage v. Acquino*, No. 13-CV-6376, 2018 WL 1478254, at *3 (W.D.N.Y. Mar. 23, 2018).

"The burden of showing the absence of any issue of material fact rests with the movant." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has established its prima facie entitlement to summary judgment, the burden shifts to the non-moving party to "go beyond the pleadings and by ... affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (emphasis added) (internal citations and quotation marks omitted). Stated differently, the non-moving party must show that materials cited "establish ... the presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Fed. R. Civ. P.* 56(c). It is not enough for the non-movant to present evidence that simply raises doubts; the non-movant must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. The "mere existence of a scintilla of evidence" to support the non-moving party's claims is insufficient to defeat a motion for summary judgment. *Id.* at 252." *Savage v. Acquino*, No. 13-CV-6376, 2018 WL 1478254, at *4 (W.D.N.Y. Mar. 23, 2018).

## ARGUMENT

## POINT I

## THE UNITED STATES DEPARTMENT OF LABOR'S INVESTIGATION WARRANTS GRANTING DEFENDANTS' MOTION

At the outset of this Memorandum, it is important to discuss a recent investigation that was conducted by the United States Department of Labor ("USDOL") at W.D. Henry between April 12, 2018 and October 1, 2018. This investigation is discussed in greater detail in the Bette and Daniel Affidavits.

In sum, the USDOL has already investigated the claims asserted by Plaintiffs in their Complaint and reviewed, among other information and documentation, the following: (a) copies of H-2A contracts; (b) an example of pay stubs provided to employees; (c) copies of payroll records for the last two (2) years, including employee names, pay rates, total hours offered, total hours worked, and total hours paid; (d) time records to correspond with payroll records; (e) proof of H-2A workers' transportation into the United States; (f) camp and housing permits; and (g) work agreements, etc. (Bette Aff. ¶ 9, Ex. "A"). The investigation covered the time period in question in this action (September 12, 2016 to September 9, 2018). (*Id.* ¶ 8, Ex. "I").

More telling, is that on August 31, 2018, investigators informed W.D. Henry that they had been notified by the New York State Department of Labor that W.D. Henry should be investigated for alleged discrimination against domestic workers in favor of H-2A workers. (*Id.* ¶ 16). This particular investigation lasted approximately four (4) months, with investigators of the USDOL requesting and reviewing the following: (a) earnings reports for all U.S. and H-2A workers; (b) employee contact information, start and end hiring dates; (c) ETA notification information for H-2A workers that left early; (d) time card copies to prove W.D. Henry was paying employees to take workers to the store; (e) a list of U.S. workers who left prior to H-2A

3

workers, and reasons why; (f) reasons for leaving employment for all domestic workers; (g) copies of offers of employment to U.S. workers for the H-2A work order contract period; (h) wage rates; and (i) clarification of reasons workers left early, etc. (*Id.* ¶ 18, Ex. "B").

In its October 1, 2018 determination letter, the USDOL advised W.D. Henry that the only violation discovered was that in 2018, six (6) domestic workers in corresponding employment, who arrived during the H-2A recruitment period, were not reimbursed for their inbound transportation costs. No other violation was found and no civil monetary penalty was assessed. W.D. Henry immediately paid those six (6) workers (none of whom are the named Plaintiffs in this action) and submitted proof of payment to the USDOL. (*Id.* ¶ 23, Ex. "G", "H" and "I").

## POINT II

### PLAINTIFFS' FIRST CAUSE OF ACTION FAILS TO RAISE
### ANY ISSUES OF FACT

#### A. In 2017 And 2018 W.D. Henry Offered H-2A Work To All Domestic Workers

Plaintiffs erroneously allege that Defendants made false or misleading representations concerning the terms of employment by failing to inform U.S. migrant workers about the availability of $12.38 per hour laborer jobs in 2017 and $12.83 per hour laborer jobs in 2018, in violation of 29 U.S.C § 1821(f).

29 U.S.C. § 1821(f) provides, in part, that "[n]o . . . agricultural employer . . . shall knowingly provide false or misleading information to any migrant agricultural worker concerning the terms, conditions, or existence of agricultural employment . . .". See, 29 U.S.C. § 1821(f). In construing the meaning of the Agricultural Worker Protection Act's ("AWPA") reference to "false or misleading information", Federal Courts have considered the separate, but related set of regulations concerning an employer's duties under the H-2A program, see *e.g.*, 20 C.F.R § 655.122, and determined that "false or misleading information" includes a material

4

omission.  See, *Ruiz Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016); see also, 20 C.F.R. § 655.122.  In *Ruiz Torres*, the Ninth Circuit Court of Appeals found that failure to disclose "information pertaining to H-2A jobs, such as the existence or pay-rate of such work may constitute false or misleading information."  *Id.*  In the event the domestic worker accepts the employer's H-2A job offer or performs any work performed by an H-2A **worker,** then the domestic worker is considered to be engaged in "corresponding employment" and entitled to the rights and protections under the H-2A clearance order.  See, 20 C.F.R. § 655.103(b).

i.   **2017 Domestic Workers Declined W.D. Henry's H-2A Job Offer.**

In this case, and as more fully set forth in the Daniel Affidavit, in 2017, Plaintiffs and all other similarly situated employees employed by W.D. Henry, were notified of the H-2A clearance order prior to the commencement of the H-2A contract period, which began on June 15, 2017.  (Daniel Aff. ¶ 23).  The H-2A program was explained to each worker in English and Spanish, including the job description as well as the benefits and pay rates ($12.38 per hour) under the H-2A clearance order.  (*Id.*).  Each employee was interviewed and offered an H-2A qualifying position.  (*Id.*).  It was also explained to the domestic workers in English and Spanish that if they chose to decline the H-2A job offer, they would still have employment opportunities with W.D. Henry in "non-corresponding" positions, including work inside the packinghouse facility, irrigation, planting and/or work in the greenhouse.  (*Id.* ¶ 24).

W.D. Henry presented each domestic worker with the following written job offer:

> As a current employee of W.D. Henry & Sons, Inc., I am aware of
> the H-2A work that is available starting June 15, 2017 and
> continuing until October 7, 2017.  I have been given the
> opportunity to read the job order, or have it read to me in a
> language that I understand.  I have been given details about the job
> duties, work days and time, pay rate, experience requirements,
> directions and more.

I have been offered this job by W.D. Henry & Sons Inc. and choose to:

    Accept the position   Decline the Position

(*Id.* ¶¶ 25, 26, Ex. "K").

All of the domestic workers, except Justo Santiago, declined the H-2A job offer in favor of other employment opportunities at W.D. Henry.  (*Id.*¶¶ 25-27, Ex. "K").

To the extent Plaintiffs' first cause of action focuses on the recruitment/rehiring practices of W.D. Henry, and alleges that Defendants did not contact Plaintiffs in between the 2017 and 2018 growing season to advise of available work, such allegation lacks any factual or legal support. (Pls.' Compl. ¶¶ 86, 99, 109 and 126).  According to Federal Regulation 20 C.F.R. § 655.153 ("Contact with Former U.S. Employees"), employers must contact, by mail or other effective means, its former U.S. workers (except those who were dismissed for cause or who abandoned the worksite) employed by the employer in the occupation at the place of employment during the previous year and solicit their return to the job.  See, 20 C.F.R. § 655.153.

Here, as more fully forth in the Daniel Affidavit, the named Plaintiffs in this action either voluntarily abandoned their employment with W.D. Henry or they were terminated for cause for failing to follow W.D. Henry Work Rules, which were provided to each employee in writing (in English and Spanish) and signed. (Daniel Aff. ¶ 48, Ex. "DD", "EE", "FF", "GG", "HH", "II" and "LL").  Therefore, following the Federal Regulations, W.D. Henry had no obligation to contact and solicit Plaintiffs' return to the Farm after the 2017 season.

With respect to its former employees who were eligible for re-hire after the 2017 season (i.e., those that did not voluntarily abandon employment and were not terminated for cause),

W.D. Henry sent Work Opportunity Notice letters advising of available work at the Adverse Effect Wage Rate ("AEWR") of $12.83 per hour. (*Id.* ¶ 22, Ex. "J").

Moreover, despite being under no legal obligation to do so, W.D. Henry even contacted Plaintiff Kidanny Josue Martinez Reyes. (*Id.* ¶ 48, Ex. "II" and "JJ"). On October 11, 2017, Mr. Martinez Reyes abandoned his employment with W.D. Henry while work was still available. (*Id.*, Ex. "II") However, prior to the 2018 season, W.D. Henry contacted Mr. Martinez Reyes advising of available work. (*Id.*). Mr. Martinez Reyes verbally committed to report to W.D. Henry between May 1, 2018 and May 7, 2018. (*Id.*, Ex. "KK"). After failing to report to work within the given timeframe, W.D. Henry contacted Mr. Martinez Reyes, again via certified mail, informing him that work was still available. (*Id.*, Ex. "JJ"). Mr. Martinez Reyes did not report to work until May 31, 2018 due to the fact that he was "playing baseball." (*Id.*). At the time of his arrival, his position was filled and he was offered H-2A work beginning June 30, 2018. (*Id.*). Mr. Martinez Reyes accepted the H-2A position, but again, failed to report to work. (*Id.*).

### ii. 2018 Domestic Workers Performed H-2A Work And Received Benefits In Compliance With The H-2A Clearance Order.

Plaintiffs' allegation that Defendants failed to "inform U.S. migrant workers about the availability of . . . $12.83 per hour laborer jobs in 2018" lacks merit. Not only were domestic workers informed about the availability of pay at the rate of $12.83 per hour, they actually received pay at the 2018 AEWR of $12.83 per hour. (*Id.* ¶ 29, Ex. "L").

In 2018, prior to the commencement of the H-2A contract period, all domestic workers signed an Agricultural Work Agreement, agreeing to the terms and conditions of the 2018 H-2A clearance order. (*Id.*). Unlike 2017, the 2018 H-2A clearance order was all-inclusive; meaning that, H-2A work included planting and cultivating jobs, as well as jobs in the packinghouse facility, and work with irrigation systems. (*Id.*, Ex. "C"). As a result, domestic workers and H-

2A workers performed the same tasks, and received the same benefits, including pay at the 2018 AEWR of $12.83 per hour.  (*Id.* ¶ 29).

### B. Domestic Workers Were Not Entitled To Pay At The 2017 AEWR Of $12.38 Per Hour Because They Declined The 2017 H-2A Job Offer.

Plaintiffs falsely allege that in 2017, Defendants had a practice of failing to pay the 2017 AEWR of $12.38 per hour to Plaintiffs, and similarly situated employees it had employed as migrant workers, when those wages were due, in violation of 29 U.S.C. § 1822(a).

29 U.S.C. § 1822(a) provides, in part, that "[e]ach . . . agricultural employer . . . which employs any migrant agricultural worker shall pay the wages owed to such worker when due." See, 29 U.S.C. § 1822(a).  To the extent Plaintiffs' allegation focuses on the amount each domestic worker earned per hour in 2017, the law is clear that the duty to pay the AEWR arises solely as a consequence of the H-2A job order.  Only the H-2A workers hired pursuant to the approved labor certification, and domestic workers in corresponding employment, are entitled to the AEWR, which in 2017, was $12.38 per hour.  See, *Ruiz Torres*, 835 F.3d at 1131 (citing 20 C.F.R. § 655.122(a)).  In the event a domestic worker rejects the employer's H-2A job offer and does not perform any other work performed by an H-2A worker, then they are only entitled to the minimum wage rate, which was $9.70 in New York State in 2017.

As more fully set forth in the Daniel Affidavit, in 2017, every domestic worker employed by W.D. Henry, except Justo Santiago, declined W.D. Henry's H-2A job offer.  (Daniel Aff. ¶¶ 25 and 26).  Thus, Domestic Workers, other than Mr. Santiago and those in supervisory or equipment operator roles, were paid the New York State minimum wage of $9.70 per hour.  (*Id.* ¶ 25).  Mr. Santiago earned the 2017 AEWR of $12.38 per hour as a corresponding worker and the supervisors/equipment operators earned a minimum of the AEWR.  (*Id.* ¶¶ 25 and 30, Ex. "M", "N").

8

To the extent Plaintiffs cite 29 U.S.C. § 1822(a) for purposes of alleging that wages were not timely paid, the corresponding Federal Regulation 29 C.F.R. § 500.81 provides, in part, that "[e]ach . . . agricultural employer . . . which employs any migrant or seasonal agricultural worker must pay the wages owed such worker when due. In meeting this responsibility, the . . . agricultural employer . . . shall pay the worker no less often than every two weeks (or semi-monthly)." 29 C.F.R. § 500.81. New York State Labor Law §191(1)(a)(i) fits within 29 C.F.R. § 500.81 by requiring manual workers to be paid weekly. See, N.Y. Lab. Law § 191(1)(a)(i).

As set forth in the Daniel Affidavit, and as further supported by Plaintiffs' weekly wage statements, W.D. Henry pays each of its agricultural workers on a weekly basis. (Daniel Aff. ¶ 36, Ex. "V"). Thus, W.D. Henry fully complied with the Federal and State wage requirements described above.

## C. Terms And Conditions Of Employment Under The H-2A Clearance Orders

Plaintiffs allege that in 2017 and 2018, Defendants failed to provide Plaintiffs and similarly situated employees with employment on the terms and conditions required under the H-2A clearance orders, in violation of 29 U.S.C. § 1822(c). Section 1822(c) provides, in part, that "[n]o . . . agricultural employer . . . shall, without justification, violate the terms of any working arrangement made by that . . . employer . . . with any migrant agricultural worker." 29 U.S.C. § 1822(c). Thus, Plaintiffs rely on the H-2A clearance orders to establish a "working arrangement" with Defendants.

Each individual claim is addressed below; however, it must be noted at the outset that Plaintiffs' reliance on the 2017 H-2A clearance order to establish that a "working arrangement" existed between the parties lacks merit. The domestic workers employed in 2017 were not employed under the H-2A clearance order and they did not perform any other qualifying H-2A

tasks; thus, the terms and conditions of the 2017 H-2A clearance order were not applicable to them. (Daniel Aff. ¶¶ 26 and 27, Ex. "K").

i.    **The Average Weekly Hours Of Domestic Workers Exceeded The Average Weekly Hours Of H-2A Workers.**

Plaintiffs' assertion that Defendants reduced the hours of its domestic workers in favor of H-2A workers lacks merits.

As mentioned above, in 2017, H-2A workers and domestic workers were not performing the same tasks. (*Id.* ¶ 25). Domestic workers declined the H-2A job offer and did not carry out any other duties performed by H-2A workers. (*Id.* ¶¶ 26, 27, Ex. "K"). Domestic workers chose to work in the packinghouse, or perform irrigation or planting work, not covered under the 2017 H-2A clearance order. (*Id.* ¶ 27). Since domestic workers and H-2A workers did not have the same responsibilities, it would be illogical for W.D. Henry to reduce the hours of its domestic workers. For example, when Plaintiffs Edwin Cosme Colon and Hector Ivan Burgos Rivera voluntarily abandoned their employment and returned to Puerto Rico prior to the end of the 2017 season, W.D. Henry had to complete the season with a "skeleton crew", which placed the business in jeopardy of failing to meet its seasonal demands. (*Id.* ¶ 49).

Even though the 2017 domestic workers were not subject to the H-2A clearance order, all domestic workers signed, in English and Spanish, the New York State Department of Labor "Pay Notice and Work Agreement for Farm Workers" ("Work Agreement"). (*Id.* ¶ 35, Ex. "T"). Paragraph "5" of each Work Agreement provides that the standard work week for each domestic worker is "40" hours (greater than the "36" hour work week set forth in the 2017 H-2A clearance orders). (*Id.*). Thus, not only were domestic workers promised more hours under their Work Agreements than their H-2A co-workers, but according to W.D. Henry time reports, they also worked more hours than their H-2A co-workers. (*Id.* ¶ 37, Ex. "W" and "X").

10

With respect to Plaintiffs' specific allegations surrounding the hours offered to and worked by each named Plaintiff, W.D. Henry's timecard records clearly show that such claims lack merit.  Specifically:

- Plaintiff Rolando Diaz Reyes alleges that he worked as few as 15 hours per week.  (Pls.' Compl. ¶ 82). W.D. Henry's timecard records show that Mr. Reyes worked an average of 50.97 hours per week.  (*Id.* ¶ 38, Ex. "W").

- Plaintiff Hector Ivan Burgos Rivera alleges that he sometimes worked as few as 2 hours in a day and that he was "forced to leave his employment with Defendants because he was provided with so few work hours."  (Pls.' Compl. ¶ 94).  W.D. Henry's timecard records show that Mr. Rivera worked an average of 50.20 hours per week.  (Daniel Aff. ¶ 38., Ex. "W").

- Plaintiff Jose Garcia Marrero alleges that he worked less than 40 hours in a week.  (Pls.' Compl. ¶ 106).  W.D. Henry's timecard records show that Mr. Marrero worked an average of 53.71 hours per week.  (Daniel Aff. ¶ 38, Ex. "W").

- Plaintiff Edwin Cosme Colon alleges that his hours were substantially reduced and that Defendants regularly provided H-2A workers with at least 10 hours per day.  (Pls.' Compl. ¶ 124).  W.D. Henry timecard records show that Mr. Colon worked an average of 49.41 hours per week.  (Daniel Aff. ¶ 38, Ex. "W").

- Plaintiff Kidanny Josue Martinez Reyes makes no allegation as to his hours; however, it should be noted that W.D. Henry's timecard records show that Mr. Martinez Reyes worked an average of 56.91 hours per week.  (Daniel Aff. ¶ 38, Ex. "W").

Overall, in 2017, domestic workers worked an average of 54.56 hours per week (more than promised in their Work Agreements) compared to 2017 H-2A workers who worked an

average of 49.66 hours per week. (*Id.* ¶ 37, Ex. "W", "X"). In 2018, domestic workers worked an average of 63.94 hours per week compared to 2018 H-2A workers, who worked an average of 60.24 hours per week. (*Id.*, Ex. "O","Y" "Z"). Thus, the average weekly hours of domestic workers has exceeded the average weekly hours of H-2A workers for each year W.D. Henry has participated in the H-2A program.

### ii.      Reimbursement Of Transportation Costs.

Plaintiffs incorrectly allege that W.D. Henry failed to reimburse them and similarly situated employees for inbound and outbound travel costs.

The terms and conditions contained in the 2017 and 2018 H-2A clearance orders comply with Federal Regulation 20 C.F.R.§ 655.122. An employer's obligation to pay for a domestic worker's transportation and subsistence costs applies to those domestic workers in "corresponding employment". See, 20 C.F.R. § 655.122(h)(1). If the worker completes the work contract period, or if the employee is terminated *without cause*, the employer must provide or pay for the worker's transportation and daily subsistence from the place of employment to the place from which the worker departed to work for the employer. See, 20 C.F.R. § 655.122(h)(2) (emphasis added). However, in the event the worker voluntarily abandons employment before the end of the contract period, or is terminated for cause, the employer is not responsible for providing or paying for that worker's transportation and subsistence expenses. See, 20 C.F.R. § 655.122(n).

### a.  Defendants Did Not Have An Obligation To Reimburse/Pay Transportation Costs Of The 2017 Domestic Workers.

As previously discussed above, in 2017, domestic workers declined the H-2A job offer and were not engaged in corresponding employment. (Daniel Aff. ¶¶ 25-27, Ex. "K"). Accordingly, W.D. Henry had no obligation to pay for the transportation or daily subsistence for

its 2017 domestic workers.  It should be noted that Justo Santiago, the sole domestic worker who accepted the 2017 H-2A job offer, lived locally and commuted to work each day from his home, and therefore, was not entitled to transportation in accordance with the 2017 H-2A clearance order which provided that: "[n]o daily transportation is provided by employer to local workers other than from farm to worksite."  (*Id.*, Ex. "A").

Assuming arguendo that the named Plaintiffs in this action were in corresponding employment (which they were not), W. D. Henry still had no obligation to pay outbound transportation costs as a result of the manner in which the Plaintiffs separated from employment with W.D. Henry.

As set forth in the Daniel Affidavit, Plaintiffs either voluntarily abandoned their employment with W. D. Henry or they were terminated for cause.  (*Id.* ¶ 48).  Thus, following 20 C.F.R. § 655.122(n), Plaintiffs were not entitled to payment to cover outbound transportation costs.

### b.  Defendants Complied With The Obligation To Reimburse/Pay Transportation Costs Of Its 2018 Domestic Workers.

With respect to the 2018 domestic workers in corresponding employment, this issue was specifically addressed by the USDOL in its October 1, 2018 determination letter addressed to Daniel Henry.  (Bette Aff. ¶ 23, Ex. "I").  After a four (4) month investigation, the USDOL determined that W.D. Henry was in violation of 20 C.F.R. § 655.122(h)(1) for "[f]ailure to comply with transportation to place of employment/daily subsistence requirement(s).  Specifically, the investigation disclosed that U.S. workers were not reimbursed for travel from Puerto Rico to the Farm."  (*Id.*).  Notably, the USDOL only identified six (6) domestic workers who were affected, none of whom are the named Plaintiffs in this action.  These workers have been paid all monies owed.  (*Id.* ¶¶ 22, 23 Ex. "F", "G", "H" and "I").

With regard to outbound transportation in 2018, W.D. Henry complied with 20 C.F.R. § 655.122(n) and the 2018 H-2A clearance order and paid outbound transportation and subsistence costs to all but three (3) corresponding workers who abandoned their employment with W.D. Henry prior to the end of the contract period, which extended from June 30, 2018 to October 20, 2018. (Daniel Aff. ¶ 29).

### iii.   Housing Arrangements.

Plaintiffs allege that in 2017 and 2018, Defendants failed to provide Plaintiffs and similarly situated employees with employment on terms and conditions required by their H-2A clearance orders; specifically, denying Plaintiffs and similarly situated employees their agreed upon housing arrangements without justification.  Plaintiffs' argument fails to raise any issue of fact.

### a.   Housing Arrangements For 2017 Domestic Workers.

According to Federal Regulation 20 C.F.R. § 655.122(d), "[t]he employer must provide housing at no cost to the H-2A workers and those workers in corresponding employment who are not able to return to their residence within the same day." 20 C.F.R. § 655.122(d).

As more fully set forth above, domestic workers were not in corresponding employment in 2017, and therefore, the terms and conditions set forth in the H-2A clearance order were not applicable to them.  However, in 2017, W.D. Henry did offer housing to its domestic workers through the New York State Work Agreements at the time of hire.  (Daniel Aff. ¶ 35, Ex. "T").

In the event the Work Agreements constitute a "working arrangement" pursuant to 29 U.S.C. § 1822(c), then it must be determined whether the terms of the housing arrangement were violated without justification.  See, 20 U.S.C. § 1822(c).  Federal Regulation 29 C.F.R. § 500.72(a), provides that, "[n]ormally, 'without justification' would not include situations in which

failure to comply with the terms of any working arrangements was directly attributable to acts of God, due to conditions beyond the control of the person or to conditions which he could not reasonably foresee." 29 C.F.R. § 500.72(a).

In 2017, W.D. Henry had to change the housing accommodations offered to its domestic workers living in its on-site housing in order to ensure that H-2A employees had housing that complied with the H-2A clearance order. (Daniel Aff. ¶ 41). The obligation to comply with H-2A clearance orders is a condition beyond the Defendants' control. Notably, however, the relocated workers were provided housing at the Angola Motel located at 9159 Erie Road, Angola, New York. (*Id.*, Ex. "AA"). Rooms at the Angola Motel featured a microwave, refrigerator, air conditioning, television, and a daily cleaning service. (Gorman Aff. ¶ 5). Furthermore, the location of the motel was less than a five (5) minute walk to a pizzeria, Key Bank, Rite Aid, Walgreens, and Tops Supermarket. (*Id.* ¶ 6). Employees also had access to a W.D. Henry vehicle if they wanted to drive to any of the nearby destinations. (*Id*). The motel was also less than a five (5) minute drive to a beach, which they visited during their stay. (*Id.* ¶ 7). W.D. Henry paid all motel expenses and employees were provided with vehicles (and gasoline) to allow them to travel to and from work each day, at no cost to them. (Daniel Aff. ¶ 41, Ex. "AA"). Workers were authorized and encouraged to use the cooking facilities in the on-site housing prior to returning to the motel at the end of their shift. (*Id.*).

**b.    Housing Arrangements For 2018 Domestic Workers.**

As discussed above, in 2018, all domestic workers were engaged in corresponding employment, and therefore, were provided with on-site housing pursuant to the terms and conditions of the 2018 H-2A clearance order. (*Id.* ¶ 42). At no time in 2018, did W.D. Henry

15

make any changes to the housing accommodations offered to its domestic workers in corresponding employment. (*Id.*).

### iv.   Defendants Provided All Workers With Available Drinking Water And Bathroom Facilities.

Plaintiffs falsely allege that they were denied access to drinking water and bathroom facilities which were made available to H-2A workers.

As set forth in the Daniel Affidavit, W.D. Henry has been a participant in the United States Department of Agriculture ("USDA") Good Agricultural Practices program ("GAP") since 2007. (*Id.* ¶ 43). As part of this program, W.D. Henry is required to provide properly stocked field sanitation units (portable bathroom and hand washing facilities) to all employees. (*Id.*). This program also requires that potable drinking water and single use cups be provided to all employees. (*Id.*) W.D. Henry has achieved USDA GAP certification with high marks every year of its participation in the program since 2007. (*Id.*, Ex. "BB").

In order to fulfill its obligation to provide portable bathrooms, W.D. Henry contracts with Ball Toilet & Septic Services. (*Id.* ¶ 44, Ex. "CC"). With respect to potable water, W.D. Henry provides workers with water coolers, ice and vehicles to allow employees to travel to the office to refill water/ice if and when needed. (*Id.* ¶ 46). Perhaps more telling is that in 2017, the majority of domestic workers worked in the packinghouse, which has bathrooms and water readily available inside the facility. (*Id.* ¶ 45).

### POINT III

### PLAINTIFFS' SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT LACKS MERIT

Plaintiffs allege that Defendants materially breached enforceable agreements with the Plaintiffs by: (a) paying Plaintiffs less than the federally mandated AEWR for their work; (b)

failing to reimburse Plaintiffs for their inbound and outbound travel expenses; and (c) failing to provide Plaintiffs with employment on the terms and conditions required by the 2017 and 2018 H-2A clearance orders.

For all the reasons more fully discussed above, Defendants, at all times, were in compliance with the H-2A clearance orders and all applicable federal and state laws and regulations.  As such, Plaintiffs' second cause of action fails to raise any issues of fact.

**POINT IV**

**PLAINTIFFS' THIRD CAUSE OF ACTION UNDER
THE FLSA LACKS MERIT**

Plaintiffs allege that that Defendants failed to pay Plaintiffs and other similarly situated employees at least the federal minimum wage for every hour worked per week, as required by the Fair Labor Standards Act ("FLSA").  Specifically, Plaintiffs assert that Defendants' 2017 and 2018 clearance orders provided that Defendants would reimburse transportation costs and reasonable subsistence for workers with pay for the first workweek, to the extent such worker-borne expenditures reduced the worker's earnings below the FLSA minimum wage for the first workweek.

### A. Defendants Did Not Have An Obligation To Reimburse The 2017 Domestic Workers Under The FLSA.

In general, the FLSA does not require employers to pay for the transportation costs of their employees. *Montalvo v. Larchmont Farms, Inc.*, 2009 U.S. Dist. LEXIS 112751, at *17-18 (D.N.J. 2009) (citing *Brock v. Glassboro Serv. Ass'n, Inc.*, 1987 WL 25334, at *5 (D.N.J. 1987), *aff'd sub nom.*, *McLaughlin v. Glassboro Serv. Ass'n, Inc.*, 841 F.2d 1119 (3d Cir. 1988)). Rather, the obligation to reimburse an employee for inbound travel under the FLSA is directly tied to the H-2 programs (H-2A and H-2B).  The rationale behind reimbursement for H-2

17

workers, is that the FLSA prohibits covered employees from incurring costs that are "primarily for the benefit of the employer" if such costs take the employee's wages below the FLSA minimum wage. See, *Salazar-Martinez v. Fowler Bros.* 781 F.Supp.2d 183, 190 (W.D.N.Y. 2011). In Field Assistance Bulletin No. 2009-2 ("Bulletin 2009-2"), the USDOL clarified that workers in H-2 programs benefit from their position less than employees typically benefit from new jobs; reasoning that these positions are temporary with no possibility of the jobs becoming permanent, no matter how well the employee performs. Further, once the work period is complete, and if the employees have not secured subsequent temporary employment under the visa program, the H-2 employees have no option to remain in the United States. See, Bulletin 2009-2. Thus, in the context of H-2 programs, inbound travel costs are viewed as "primarily for the benefit of the employer", not the employee, and FLSA reimbursement for inbound travel is required in the first workweek.

Given the link between the H-2A program and the FLSA reimbursement requirement, Plaintiffs, who were not affiliated with the H-2A program in 2017, cannot claim that they should have been reimbursed in the first workweek under the FLSA. While Plaintiffs and similarly situated employees had the opportunity to participate in the H-2A program and receive the benefits offered under the H-2A clearance order, they declined such opportunity. (Daniel Aff. ¶¶ 25, 26, Ex. "K"). Furthermore, at no time during the 2017 season did any domestic worker perform any other H-2A qualifying tasks. (Daniel Aff. ¶ 29). Thus, Plaintiffs were not entitled to the benefits under the 2017 H-2A clearance order, including reimbursement in the first workweek under the FLSA. To hold otherwise would subject employers to the costly burden of having to pay every employee it hires from out of state, whether or not such employee is a part of an H-2 program.

18

**B. Defendants Reimbursed Eligible 2018 Domestic Workers For Inbound Travel Costs Under The FLSA.**

When an expense incurred by an H-2A worker is determined to be "primarily for the benefit of the employer", the employer must reimburse the employee during the first workweek in which the expense was incurred up to the amount needed to comply with the federal minimum wage laws. See, *Ojeda-Sanches v. Bland Farms, LLC*, 2010 U.S. Dist. LEXIS 84752, at \*24 (S.D.Ga. 2010).

Here, several of the domestic workers arrived at the Farm prior to the H-2A contract period (June 30, 2018), and even prior to the H-2A recruitment period (April 26, 2018). (Bette Aff. ¶ 22, Ex. "F"). Therefore, in the first workweek, these workers were not in corresponding employment and did not report to the Farm for purposes of accepting an H-2A-covered position. Thus, they were not entitled to reimbursement in their first workweek under the FLSA because they were not part of the H-2A program during the applicable first workweek.

With respect to the any of the employees who arrived at the Farm during the H-2A recruitment period, these six (6) individuals were brought to W.D. Henry's attention by the USDOL during its four (4) month investigation. (*Id.* ¶ 22). W.D. Henry immediately paid those workers in full, rendering this issue moot. (*Id.*). The USDOL conspicuously did not order the reimbursement of travel expenses for those earlier-arriving domestic workers, despite specifically investigating such reimbursements during this time period.

## POINT V

### PLAINTIFFS' FOURTH CAUSE OF ACTION UNDER THE NEW YORK LABOR LAW LACKS MERIT

#### A. Frequency Of Payments.

Plaintiffs falsely allege that Defendants failed to pay them and other similarly situated employees their wages when due, in violation of New York Labor Law § 191.  As discussed above, New York State Labor Law § 191(1)(a)(i) requires "manual workers" to be paid weekly and not later than seven (7) calendar days after the end of the week in which the wages are earned.  See, N.Y. Lab. Law § 191(1)(a)(i).  A manual worker means a mechanic, workingman or laborer.  See, N.Y. Lab. Law § 190(3).  The New York State Department of Labor defines a "manual worker" as an employee that spends more than twenty-five percent (25%) of their working time performing physical labor.  See, *Gonzalez v. Gan Israel Preschool*, 2014 U.S. Dist. LEXIS 34633 at *3 (E.D.N.Y 2014) (citing N.Y. Dep't of Labor Counsel Opinion Letter RO-09-0066).  Plaintiffs and other similarly situated employees are manual workers as that term is defined.

As set forth in the Daniel Affidavit, W.D. Henry pays each of its agricultural workers weekly in accordance with the New York State Labor Law, as evidenced by employee paystubs showing a weekly "check date".  (Daniel Aff. ¶ 36, Ex. "V").

#### B. Final Paychecks.

Plaintiffs also assert that Defendants withheld final paychecks from Hector Ivan Burgos Rivera and Kidanny Josue Martinez Reyes, in an effort to coerce them into signing job abandonment forms.  This assertion lacks any merit.

As set forth in the Daniel Affidavit, at no time has any Defendant or owner of W.D. Henry engaged in any coercive behavior in order to get an employee to sign a job abandonment

form. (*Id.* ¶ 50). In fact, the only way in which Defendants would benefit from having an employee sign a job abandonment form, is if that employee was engaged in corresponding employment, because the employer could then relieve itself from the obligation of paying that employee's outbound transportation. See, 20 C.F.R § 166.122(n) (stating, employers are not responsible for providing or paying for the outbound transportation costs to workers that voluntarily abandon employment before the end of the contract period.). Here, Plaintiffs were not in corresponding employment, and therefore, not entitled to outbound transportation. Defendants had no motivation to coerce the signing of a job abandonment form.

To the extent any paycheck was held by Defendants after the separation of employment (which it was not), it would have only been held until Defendants conducted an "exit interview" with the employee to exchange necessary paperwork. Exit interviews with departing employees are a standard practice at W.D. Henry. (Daniel Aff. ¶ 50).

**C. Notice At Time Of Hire.**

Plaintiffs allege that Defendants failed to furnish them and other similarly situated employees with proper and accurate written notice at the time of hire, in violation of New York Labor Law §195(1).

New York Labor Law §195(1) requires each employer to provide its employees, in writing, in English and in the language identified by each employee as their primary language, at the time of hire, a notice containing various information, including: rate of pay, whether paid by the hour, shift, day, week or other; allowances, if any; pay day; the name of the employer, address, telephone number, etc. See, N.Y.L.L. §195(1). The New York State Department of Labor issues a form, "Pay Notice and Work Agreement for Farm Workers" ("Work Agreement"), which states directly on the Work Agreement, that it "satisfies the Pay Notice provisions of

Section 195 of the NYS Labor Law and written work agreement provisions of Part 190, the Farm Minimum Wage Order". (Daniel Aff. ¶ 35, Ex. "T" and "U").

As set forth in the Daniel Affidavit, each employee of W.D. Henry is required to review and sign the Work Agreement, which is presented to each employee in English and Spanish at the time of hire. (*Id.*). Thus, W.D. Henry fully complies with the State notice requirements as described above.

### D. Weekly Notice.

Plaintiffs also allege that Defendants failed to furnish them and other similarly situated workers with proper and accurate written notice with each payment of wages in violation of New York Labor Law § 195(3).

New York Labor Law § 195(3) requires each employer to furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate of pay and basis thereof; gross wages; deductions; allowances, if any; and net wages. See, N.Y.L.L. §195(3).

As set forth in the Daniel Affidavit, each W.D. Henry employee is given a wage statement with each weekly paycheck, informing them of the following: dates of work covered by the payment of wages; name of the employee; name of employer; address and phone number of employer; pay rate; gross wages; deductions and net wages. (Daniel Aff. ¶ 36, Ex. "V"). Thus, W.D. Henry fully complies with the State notice requirements on a weekly basis.

## CONCLUSION

For all the reasons set forth herein and in the accompanying affidavits, Defendants respectfully request that this Court grant Defendants' motion for an Order pursuant to Federal Rules of Civil Procedure 56 granting summary judgment dismissing the Plaintiffs' Complaint and for such other and further relief as the Court deems just and proper.

Dated: December 18, 2018

Respectfully submitted,

/s/ Chaim J. Jaffe
Chaim J. Jaffe, Esq.
Scolaro Fetter Grizanti & McGough, P.C.
*Attorneys for Defendants*
507 Plum Street, Suite 300
Syracuse, NY 13209
Telephone: (315) 471-8111